IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>JAMES TIMOTHY MATHIS,<br><br>*Defendant.* | Case No. CR-23-082-JFH |

### ORDER OVERRULING THE OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

Defendant James Timothy Mathis pleaded guilty to Count Three of the Indictment, charging him with being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(8). (Docket No. 30 at 1; Docket No. 32.)  The Court scheduled a sentencing hearing before the undersigned for October 24, 2024.  (Docket No. 43.)  In anticipation of the sentencing hearing, the U.S. Probation Office ("Probation") drafted a Presentence Investigation Report ("PSR").  (Docket Nos. 38, 41, 42.)  Mathis objected to the PSR.  (Docket No. 39.)  For the reasons that follow, the Court **OVERRULES** his objections.

I.

The Court draws these facts from the uncontested portions of the PSR and plea agreement. See Fed. R. Crim. P. 32(i)(3)(A); U.S.S.G. § 6B1.4(a).

On March 4, 2023, a police officer with the Sequoyah County Sheriff's Office pulled over Mathis for driving with a non-operational brake light.  (PSR ¶ 6.)  During the stop, Mathis told the officer that he had been "in trouble for manufacturing narcotics" in the past.  (Id.)  He consented to a vehicle search.  (Id.)  The officer found a loaded .38 SPL caliber Smith & Wesson revolver in the passenger glove box, alongside a set of digital scales covered "with white crystal-like residue."

(Id. ¶ 7.) The officer then searched Mathis, found a bag in his coat containing what appeared to be methamphetamine, and asked Mathis if it was a bag of methamphetamine. (Id.) Mathis admitted that it was. (Id.)

When Mathis pled guilty on August 8, 2023, the Government dismissed the remaining counts in the Indictment, including one count for "knowingly and intentionally possess[ing] with intent to distribute an unspecified quantity of a mixture and substance containing methamphetamine," 21 U.S.C. §§ 841(a)(1), (b)(1)(C). (Docket No. 2 at 1; Docket No. 30 at 2.) Probation then drafted the PSR, which confirmed that Mathis carried 15.22 grams of methamphetamine when he was arrested and listed Mathis's previous conviction in state court for manufacturing methamphetamine. (PSR ¶¶ 7, 27.) Probation also assigned Mathis a four-point enhancement to his total offense level under U.S.S.G. § 2K2.1(b)(6)(B) for possessing the firearm in connection with another felony offense. (Id. ¶ 16.) In doing so, Probation explained that Mathis possessed the firearm along with the methamphetamine and the scales. (Id.)

Mathis objected to this enhancement, arguing that the methamphetamine in his possession was for personal use only.[1] (Docket No. 42 at 16.) As proof, Mathis points to his "long history" of methamphetamine abuse and statements he made to ATF agents in a post-arrest interview about his daily methamphetamine use. (Id.; PSR ¶ 8.)

The Government responds that if the case had gone to trial, it would have proven Mathis's intent to distribute. (Docket No. 42 at 18.) That proof would have included calling an expert to testify that: (1) the amount of methamphetamine found on Mathis was consistent with an amount found on someone intending to distribute it; (2) individuals who distribute methamphetamine typically carry firearms for protection when distributing it; and (3) drug dealers use digital scales

---

[1] Mathis objects to other paragraphs in the PSR, but only insofar as they reflect his total offense level with the enhancement. (Docket No. 42 at 16-17.) He did not object to the facts contained in the PSR or plea agreement.

like the ones found in Mathis's car to weigh drugs before distributing them. (Id. at 19.) And the Government would have offered Mathis's admission that he "had been in trouble in the past for manufacturing narcotics," along with his history of manufacturing methamphetamine, if permitted on rebuttal. (Id.)

After reviewing the submissions by both Mathis and the Government, Probation concluded that Mathis's objection was unfounded. (Id. at 21.) In its view, "the amount [of methamphetamine] recovered was large enough to be charged under an intent to distribute statute" regardless of whether Mathis claimed it was for personal use. (Id.)

## II.

Section 2K2.1(b)(6)(B) of the Sentencing Guidelines provides a four-level enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." The enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1, cmt. 14(B)(ii). "Another felony offense" means "any federal, state, or local offense," not including the instant firearm possession offense, "punishable by imprisonment for a term exceeding one year, regardless of whether . . . a conviction [was] obtained." Id., cmt. 14(C). The Government bears the burden of proving the enhancement—including the facts justifying the enhancement—by a preponderance of the evidence. See United States v. Leib, 57 F.4th 1122, 1126 (10th Cir. 2023); United States v. Robertson, 946 F.3d 1168, 1171-72 (10th Cir. 2020).

Because Mathis has pleaded guilty to unlawful possession of a firearm, the Court considers whether there is a preponderance of evidence that he did so in connection with the possession of five or more grams of methamphetamine with the intent to distribute: a federal felony and "drug trafficking offense," punishable by imprisonment exceeding one year. 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); see also U.S.S.G. § 2L1.2, cmt. 2 ("'Drug trafficking offense' means an offense

3

under federal, state, or local law that prohibits . . . the possession of a controlled substance . . . with intent to . . . distribute . . . ."); cf. United States v. Dominguez-Rodriguez, 817 F.3d 1190, 1195-96 (10th Cir. 2016) (declaring § 841(a)(1) a "drug trafficking offense" under § 2L1.2). This inquiry requires proof that: "(1) the defendant knowingly possessed the illegal drug[,] and (2) the defendant possessed the drug with the specific intent to distribute it." Dominguez-Rodriguez, 817 F.3d at 1195 (quoting United States v. Carter, 130 F.3d 1432, 1440 (10th Cir. 1997)).

Mathis argues that there is not enough evidence that he intended to distribute methamphetamine. For support, Mathis points to his history of methamphetamine abuse and statements to law enforcement that he regularly used methamphetamine.

But these statements do not outweigh the remaining evidence, which proves more likely than not that he possessed methamphetamine with the intent to distribute. In Mathis's car, there were the digital scales—"tools of the drug trade" from which a jury may infer the intent to distribute. United States v. Triana, 477 F.3d 1189, 1195 (10th Cir. 2007); see, e.g., United States v. Barela, 102 F. Supp. 3d 1212, 1229 (D.N.M. 2015) (collecting cases). And then there is the amount of methamphetamine on his person at the time of the traffic stop—over 15 grams—which the Government's expert would testify is consistent with drug dealing, not personal use. See, e.g., United States v. Draine, 26 F.4th 1178, 1191 (10th Cir. 2022) ("[A]n expert on illegal drug activities may testify that the amount . . . of drugs found in the defendant's possession by the police [is] consistent with the distribution of drugs for street use rather than with holding the drugs for personal use."). That expert would also testify that methamphetamine distributors carry firearms for protection and scales for weighing drugs before distributing them. Cf. United States v. Tinsley, 62 F.4th 376, 387 (7th Cir. 2023) (rejecting a sufficiency of the evidence challenge where a government witness testified that the defendant possessed "a quantity of meth[amphetamine] consistent with distribution as opposed to personal use" and that testimony was "bolstered," in

4

part, by the presence of a scale and firearms nearby). And finally, there is Mathis's history of and admission to manufacturing methamphetamine in the past. See United States v. Tobanche, 643 F. App'x 781, 784 (10th Cir. 2016) (finding that evidence supported the enhancement where, in part, the defendant "had been involved with other drug felonies in the past" (citing United States v. Paneto, 661 F.3d 709, 716 (1st Cir. 2011))). Together, this evidence makes it more likely than not that Mathis possessed the methamphetamine on his person at the time of the traffic stop with intent to distribute it.

Beyond contesting his intent to distribute, Mathis does not challenge that the Government has proven by a preponderance of the evidence that he knowingly possessed the methamphetamine or the nexus between the firearm and the drugs. Nor could he. First, it is more likely than not that Mathis knowingly possessed methamphetamine because he actually possessed the methamphetamine and admitted that the bag contained methamphetamine. Cf. United States v. Johnson, 46 F.4th 1183, 1187 (10th Cir. 2022) ("[A] person has actual possession of an item if he has direct physical control over it at a given time." (citation omitted)). Second, "[h]andguns are widely recognized as a tool of the drug dealers['] trade," so "a weapon's proximity to narcotics may be sufficient to provide the nexus necessary" for the enhancement. United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1998). Mathis carried his loaded firearm in the car's passenger glovebox, beside the digital scales and within arm's reach. Given the firearm's location near drug dealing equipment and its availability to Mathis, the Court finds that this "proximity" was "sufficient" to prove the requisite nexus. Id.; see, e.g., United States v. Hernandez, 278 F. App'x 826, 835 (10th Cir. 2008) (affirming district court's enhancement where the defendant possessed narcotics in close proximity to a firearm in his car). Accordingly, there is a preponderance of evidence that Mathis possessed the firearm in connection with possession of methamphetamine with the intent to distribute.

5

The Court separately finds the enhancement appropriate because it is more likely than not that Mathis possessed the firearm in connection with the commission of another felony: felony drug possession. Possessing methamphetamine is a felony for Mathis due to his prior conviction for manufacturing methamphetamine, see 21 U.S.C. §§ 844(a), (c), and the same evidence listed above—like Mathis's possession of methamphetamine on his person—would amount to a preponderance of the evidence for applying the enhancement, see United States v. Serna, 405 F. Supp. 3d 1107, 1112-13 (D.N.M. 2019) (collecting cases where courts have applied the enhancement for felony drug possession under similar circumstances); cf. United States v. Lacey, 86 F.3d 956, 970 (10th Cir. 1996) (noting that simple possession entails the same elements as possession with intent to distribute, minus the intent to distribute).

To be "in connection with . . . another felony offense" that is not a drug distribution offense, the firearm must have "facilitated, or had the potential of facilitating," that offense. U.S.S.G. § 2K2.1, cmt. 14(A). This means that the Government must prove "by a preponderance of the evidence that the firearm facilitated or had the potential to facilitate, i.e., make easier, another felony offense." United States v. Sanchez, 22 F.4th 940, 942 (10th Cir. 2022) (collecting cases). "[P]ossession of a firearm may facilitate" a drug possession offense "by emboldening the possessor to commit the offense," United States v. Justice, 679 F.3d 1251, 1255 (10th Cir. 2012), namely because a firearm "ha[s] the potential to facilitate illegal drug transactions by helping [a defendant] protect himself and his drug supply," United States v. Gambino-Zavala, 539 F.3d 1221, 1230 (10th Cir. 2008).

With this deadly potential in mind, the Court finds that it is more likely than not that Mathis possessed the firearm in connection with felonious drug possession. United States v. Justice, in which the Tenth Circuit affirmed a district court that applied the enhancement, is instructive here. 679 F.3d at 1255. In that case, Justice's firearms were within arm's reach at the time of his arrest,

6

and he had methamphetamine on his person, so "[a] reasonable person could find that the firearms gave him a sense of security emboldening him to venture from his home with drugs that someone might wish to take from him by force."  Id.  Similarly, when Mathis was arrested, his loaded firearm was within arm's reach (in the glove box), and he had methamphetamine on his person.  Accordingly, the Court concludes that the gun could "embolden[] him to venture from his home with" methamphetamine.  Id.; see Tobanche, 643 F. App'x at 784 (concluding similarly for a defendant who possessed a loaded gun in his car with drugs in the back seat).  The firearm thus had the potential to facilitate his felonious drug possession, serving as an independent basis for the enhancement.

### III.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the Objections to the Presentence Investigation Report are **OVERRULED**.

DATED: October 2, 2024

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States Circuit Judge, Sitting by Designation